CBPARIS GROUP LIMITED,

     PLAINTIFF,

V.

THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,

     DEFENDANTS.

CASE NO.: 1:26-CV-08058

**COMPLAINT**

Plaintiff, CBParis Group Limited ("CB" or "Plaintiff"), by its undersigned counsel, hereby complains of the Partnerships identified on Schedule A (collectively, "Defendants"), which use at least the online marketplace accounts identified therein (collectively, the "Defendant Internet Stores" or "Seller Aliases"), and for its Complaint hereby alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1114, *et seq.*, 28 U.S.C. § 1338(a)-(b), and 28 U.S.C. § 1331. This Court has jurisdiction over the claims in this action that arise under the law of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claim is so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

2. Personal jurisdiction is proper as each Defendant conducts business in Illinois and the acts and events giving rise to this lawsuit, of which each Defendants stand accused, were

1

undertaken in Illinois. Specifically, Defendants have purposefully infringed upon Plaintiff's intellectual property in connection with the sale of counterfeit products to consumers in Illinois.[1]

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 as Defendants directly target consumers in Illinois, through the fully interactive, commercial Defendant Internet Stores. Each Defendant is committing tortious acts, engaging in interstate commerce, and wrongfully causing substantial injury in the State of Illinois.

**JOINDER**

4.      Joinder is proper pursuant to Federal Rule of Civil Procedure 20(a)(2), as there is a logical relationship between and among all Defendants, and Plaintiff's right to relief stems from the same series of transactions or occurrences, and questions of law and/or fact common to all Defendants will arise in the action.

5.      Plaintiff has filed, as **<u>Exhibit 2</u>** hereto, Schedule A which details the: (1) defendant store names, and (2) online marketplace account URLs found to be selling counterfeit products.

6.      The Defendant Internet Stores share a number of commonalities suggesting that they are interrelated and/or working in active concert with one another, such as: common naming conventions, overlap of business names and contact information, use of the same product images, sale of identical products, identical product listing titles, shared return addresses on packages, and other indicators that Defendants are in active concert.

7.      Given the similarities between the Defendant Internet Stores and the likelihood that many, if not all, are operated by the same individuals and/or entities, and for purposes of judicial efficiency, Plaintiff asserts that joinder of all Defendants is proper at this stage, as severing the

---

[1] Plaintiff completed a purchase of a counterfeit product from each Defendant into the State of Illinois, and submits evidence of those transactions in Exhibit 3, attached hereto.

2

case would mean that multiple stores with the same operator would be adjudicated piecemeal and/or would need to be re-joined at a later date.

## INTRODUCTION

8.      This action has been filed by CB to combat the online trademark infringement and counterfeiting activity of Defendants, who trade upon Plaintiff's valuable reputation and goodwill by offering for sale and selling unauthorized and unlicensed products using counterfeit versions of Plaintiff's federally registered trademarks.

9.      Plaintiff, CBParis Group Limited, is the owner of the federally registered trademarks associated with the fashion brand Casablanca, listed in the table below – true and correct copies of which are attached hereto as **Exhibit 1** (collectively, "CB Trademarks").

| CASABLANCA TRADEMARKS | | | |
|---|---|---|---|
| REG. NO. | MARK | CLASS(ES) OF GOODS & SERVICES | REG. DATE |
| 6,126,847 | CASABLANCA TENNIS CLUB | IC 003: Cosmetics; non-medicated toiletries; body cleaning and beauty care preparations; serums for cosmetic purposes; cosmetic masks; sunscreen preparations; facial moisturizers; non-medicated soaps; essential oils for aromatherapy use, essential oils and essential oils blends; talcum powder; hair care preparations; non-medicated skin care preparations; skin toners; nail care preparations; potpourri; non-medicated bath salts; non-pharmaceutical essential oils for treatment of ailments; antiperspirants; deodorants.<br><br>IC 014: Precious metals and their alloys; precious stones; semi precious stones; pearls; jewellery cases; ornamental lapel pins; ornaments in precious metals or coated therewith, in the nature of jewelry; pins and clips, namely, tie clips, tie pins, ornamental lapel pins, breast pins being jewelry; pendants; key rings of precious metals; jewellery; precious stones; costume jewellery; horological and chronometric instruments and apparatus, namely, clocks, stopwatches, watches, and timepieces; real and imitation jewellery, namely, rings, earrings, bracelets, necklaces, cufflinks and cameos; decorative key fobs coated with precious metal; key rings featuring trinkets and fobs of precious metal; badges of precious metals; brooches; buckles for watch bands; jewellery plated with precious metals; metal key chains; metal key rings; key holders of precious metal; key chains.<br><br>IC 018: Leather and imitations of leather; bags, namely, overnight bags, weekend bags, evening bags, handbags, gym bags, sports bags, beach bags; athletic bags; flight bags; travel bags; garment bags for travel; leather shopping bags; beach bags; satchels; luggage; luggage tags; suitcases; cosmetic cases sold empty; baby slings, namely, baby carriers worn on the body; toiletry cases sold empty; vanity cases sold empty; bags for shaving kits sold empty; cosmetic bags sold empty; attaché cases; shoulder bags; | Aug. 18, 2020 |

3

| CASABLANCA TRADEMARKS | | | |
|---|---|---|---|
| **REG. NO.** | **MARK** | **CLASS(ES) OF GOODS & SERVICES** | **REG. DATE** |
| | | backpacks; knapsacks; gym bags; duffel bags; tote bags; book bags; hand bags; purses; clutch purses; change purses; briefcases; briefcase-type portfolios; business card cases; credit card cases; calling card cases; key cases; coin pouches; wallets; umbrellas and parasols; clothing for pets.<br><br>IC 025: Clothing, namely, tops, bottoms, loungewear, bath robes, suits, shirts, trousers, t shirts, sweat shirts, hoodies, track suits, scarves, jackets, coats, rainwear, scarves, sweaters, shorts, swimming trunks, dresses, skirts; footwear; headgear, namely, hats, caps, visors. | |
| 7,909,817 | **CASA BLANCA** | IC 003: Cosmetics; non-medicated soaps; perfumery, toilet water of all kinds, particularly perfume, eau de toilette, deodorants for personal use; essential oils; hair lotions, hair cleaning and haircare substances; creams for the skin for cosmetic purposes and lotions for cosmetic purposes; shaving substances; products for after-shave care, namely, after-shave; dentifrices; cosmetic bathing additives, namely, non-medicated bath salts; lipsticks; cotton buds for cosmetic purposes; nail polish; make-up.<br><br>IC 018: Leather and imitations of leather; animal skins, hides; trunks being luggage; briefcases and suitcases; leather shopping bags, handbags, school satchels, school bags, sports bags, rucksacks; pencil cases; leather travelling bag sets; small articles of leather, namely, handbags, cosmetic cases sold empty, toiletry cases sold empty, vanity cases sold empty, bags for shaving kits sold empty, cosmetic bags sold empty, purses, clutch purses, change purses, business card cases, credit card cases, calling card cases, key cases, coin pouches, wallets; purses, pocket wallets, key cases, hip bags, belt bags; umbrellas, parasols and walking sticks; whips, harness and saddlery.<br><br>IC 025: Clothing, namely, tops as clothing, bottoms as clothing, loungewear, bath robes, suits, shirts, trousers, t-shirts, sweat shirts, hoodies, track suits, scarves, jackets, coats, rainwear, scarves, sweaters, shorts, swimming trunks, dresses, skirts; headwear; upper clothing for gentlemen and ladies, namely, shirts, t-shirts, sweat shirts, hoodies, jackets, coats, rainwear, sweaters; upper clothing for children, namely, shirts, t-shirts, sweat shirts, hoodies, jackets, coats, rainwear, sweaters; underwear and under-garments; corsets being clothing; hosiery; bathing suits for gentlemen and ladies; scarves, gloves, ties as clothing, headscarves, beach cover-ups; clothing for hiking, trekking, outdoor sports and climbing, namely, shirts, t-shirts, sweat shirts, hoodies, jackets, coats, rainwear, sweaters, pants, shorts; leisure and city shoes for gentlemen, ladies and children; clothing and headwear for soccer, basketball, handball and volleyball, for jogging, fitness training and gymnastics, for tennis, squash and badminton, for in-line skating, skateboarding, roller-skating as well as hockey, football, baseball, cycling, horse-riding, golf, for water sports, particularly for surfing, sailing, rowing and canoeing, for alpine skiing, cross-country skiing and snowboarding, for ice-skating and ice hockey, namely, shirts, t-shirts, sweat shirts, hoodies, track suits, jackets, pants, shorts; all of the aforementioned clothing and headwear not for protection or safety purposes; children's wear, namely, tops as clothing, bottoms as clothing, shirts, trousers, t-shirts, sweat shirts, hoodies, jackets, coats, rainwear, sweaters, shorts, swimming trunks, dresses, skirts; baby nappies of textile materials. | Aug. 26, 2025 |

4

10. In an effort to deceptively profit from the CB Trademarks, Defendants utilize the Defendant Internet Stores, designed to give the impression that they are legitimate licensees or resellers of authentic products manufactured or authorized by CB, with Defendants' ultimate intention being to deceive unknowing consumers into purchasing products which are unauthorized and infringe upon the CB Trademarks (hereinafter, "Counterfeit Products").

11. Defendants are advertising, offering for sale, and selling Counterfeit Products. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. Defendants attempt to avoid and mitigate liability by operating one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff is forced to file this action to combat Defendants' counterfeiting as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet.

12. Plaintiff has been and continues to be irreparably damaged through consumer confusion, reputational harm, and loss of control and exclusivity of its valuable CB Trademarks as a result of Defendants' actions and is thus seeking injunctive and monetary relief.

**THE PLAINTIFF**

13. CBParis Group Limited is a limited liability company with its primary offices located at Metropolitan Wharf, 70 Wapping Wall, London, E1W 3SS.

14. CB acquired the luxury fashion brand Casablanca in 2023.

15. The Casablanca brand was founded in 2018 and is known for its "luxury après-sport" aesthetic, blending sportswear with refined tailoring, using high-quality materials, and drawing on French-Moroccan influences. Its signature style features vibrant colors and playful

5

motifs, creating a modern yet nostalgic feel, balancing both comfort and elegance. Casablanca has a global presence and is recognized for its unique collaborations and its ability to bridge diverse cultural aesthetics.

16. Casablanca has received notable recognition in the fashion industry and beyond since its founding. In 2020, founder, Charaf Tajer, was named one of eight joint winners of the LVMH Prize for Young Fashion Designers. In 2021, CB was shortlisted as a finalist for the ANDAM Fashion Awards Grand Prize. In 2022, a short film created for CB won a cinematography award at the British Arrows, which recognizes moving-image advertising, highlighting Plaintiff's creative reach beyond the fashion industry.

17. CB offers a wide range of Casablanca merchandise, with designs developed in London, and manufactured in various countries throughout the world. This merchandise includes clothing, footwear, headwear, accessories, eyewear, jewelry, and lifestyle goods (collectively, "CB Products"). CB Products prominently feature at least one of the CB Trademarks.

18. The CB Trademarks are inherently distinctive, valid, subsisting, and in full force and effect; have been used exclusively and continuously; qualify as famous marks, and identify products as merchandise originating from Plaintiff. The trademark registrations constitute prima facie evidence of their validity and of CB's exclusive right to use the CB Trademarks pursuant to 15 U.S.C. § 1057(b).

19. CB owns the exclusive rights to develop, manufacture, distribute, license, sell, promote, and otherwise exploit CB Products of every kind and nature using, or associated with, the CB Trademarks. Plaintiff sells its CB Products directly to consumers through its official website, casablancaparis.com, as well as through its own retail stores worldwide. Additionally, Plaintiff distributes its CB Products through a global wholesale network of approximately three

hundred (300) stockists, including high-end retailers. Examples of authentic CB Products are shown in the table below.

| AUTHENTIC PRODUCT EXAMPLES |
| --- |



White Tennis Club Icon Pyramid Abduction Short Sleeve T-Shirt
$285

Green Casablanca Sport Type Sweatshorts
$365

Black L'Arche Hooded Sweatshirt
$350

20.     CB has expended significant time, energy, money, and resources into promoting the CB Trademarks and CB Products. CB spends on average approximately 6 million dollars ($6,000,000) per year on marketing and promotion of the Casablanca brand. As a result, CB Products are widely known and recognizable and are exclusively associated by consumers as being official CB Products sourced from Plaintiff. The recognition and goodwill associated with the CB Products and the CB Trademarks are of incalculable and inestimable value to the Plaintiff.

21.     CB has made efforts to protect its interests in and rights to the CB Trademarks. CB and its licensees are the only businesses and/or individuals authorized to manufacture, import, export, advertise, offer for sale, or sell any goods utilizing or featuring the CB Trademarks.

22.     Plaintiff has not licensed or authorized Defendants to use the CB Trademarks nor has it authorized the Defendants as licensees or resellers of any CB Products.

7

**THE DEFENDANTS**

23.     Defendants are individuals and/or business entities whose true identities are unknown and concealed with unverified, incomplete, or false business names, addresses, and contact information. On information and belief, all Defendants reside in foreign jurisdictions.

24.     Defendants, either individually or jointly, operate one or more Defendant Internet Stores, utilizing, at least, the Temu marketplace ("Online Marketplace").

25.     Counterfeiters, such as Defendants, operate numerous online marketplace accounts and ecommerce stores. As such, it is likely that Defendants may be infringing upon Plaintiff's intellectual property in ways not yet determined.

**THE DEFENDANTS' UNLAWFUL CONDUCT**

26.     Each Defendant Internet Store uses the CB Trademarks, without authorization to do so, in connection with the offering for sale, selling, marketing, and distributing of Counterfeit Products. Evidence of Defendants' infringing activities is attached as **Exhibit 3**.

27.     Defendants are using the CB Trademarks without authorization in product listing titles, product descriptions, as keywords in the metadata of their product listings, on product packaging, and on the physical products themselves, all in connection with the sale of Counterfeit Products. Examples of such use is shown in the table below.



| COUNTERFEIT PRODUCT LISTING EXAMPLES |
|---|

28. Defendants' Counterfeit Products are intentionally designed to look identical to authentic CB Products. Both Plaintiff and Defendants advertise and sell products using the CB Trademarks, in the same area and in the same manner, via the Internet, and during the same timeframe.

29. Defendants' unlawful use of the CB Trademarks, and unfair competition, draw would-be consumers of Plaintiff's authentic CB Products away from Plaintiff and to the Defendant Internet Stores.

30. Potential consumers purchasing CB Products are diverse, with varying degrees of sophistication, likely to have difficulty distinguishing genuine CB Products from Counterfeit Products.

31. Consumers who intend to purchase authentic CB Products are purchasing the Counterfeit Products and are receiving inauthentic, low-quality items which consumers associate with the Plaintiff.

32. Internet websites like the Defendant Internet Stores are estimated to receive tens of millions of visits per year and to generate over $350 billion in annual online sales.[1] According to an intellectual property rights seizures statistics report issued by Homeland Security and the U.S. Customs and Border Protection, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government in the fiscal year 2020 was over $1.3 billion.[2] Internet websites and ecommerce stores like the Defendant Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.*

---

[1] *See* "2020 Review of Notorious Markets for Counterfeiting and Piracy," OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, Executive Office of the President. 85 FR 62006 (October 1, 2020).
[2] *See* "Intellectual Property Rights Fiscal Year 2020 Seizure Statistics," U.S. CUSTOMS AND BORDER PROTECTION. CBP Publication No. 1542-092 (September 21, 2021).

33.     As recently addressed in the *New York Times* and by the U.S. Dept. of Homeland Security,  and as reflected in the increase of federal lawsuits filed against sellers offering for sale and selling infringing and/or counterfeit products on the above mentioned digital Online Marketplaces, an astronomical number of counterfeit and infringing products are offered for sale and sold on these digital marketplaces at a rampant rate.[1]

34.     Counterfeiters, like Defendants, operate in an organized manner, monitor trademark infringement litigation alert websites, utilize online chat platforms and groups, and use collective efforts in an attempt to avoid liability and intellectual property enforcement efforts.[2] Furthermore, there is a substantial evidentiary overlap in Defendants' behavior, conduct, and individual acts of infringement, thus constituting a collective enterprise.

35.     Counterfeiters, like Defendants, regularly conceal their contact information or identities when registering their ecommerce stores by: (1) using fictitious names and physical addresses which are incomplete, contain randomly typed letters, or fail to include cities and other relevant information; (2) using privacy services that conceal the owners' identity and contact information; and (3) creating multiple online marketplace accounts on various platforms using the Seller Aliases as well as other unknown fictitious names and addresses. This is done with the intent to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

36.     Defendants operate multiple payment processor and merchant accounts associated with their Defendant Internet Stores through the Online Marketplace and third party payment

---

[1] *See* Ganda Suthivarakom, *Welcome to the Era of Fake Products*, N.Y. TIMES (Feb. 11, 2020), https://www.nytimes.com/wirecutter/blog/amazon-counterfeit-fake-products/. *See also Combating Trafficking in Counterfeit and Pirated Goods*, U.S. DEPT. OF HOMELAND SECURITY (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/ files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf.
[2] For this reason, Plaintiff is concurrently filing a Motion For Leave to File Certain Documents Under Seal.

processors, hiding behind layers of payment gateways so they can continue operation in spite of any enforcement efforts.

37. Defendants are collectively causing harm to Plaintiff's goodwill and reputation because the effect of their unlawful actions taken together amplifies each harm and creates a single negative consumer impression. Defendants' activities, occurring at the same time and in the same retail space and manner as one another, blend together to create a single negative impression on consumers such that they constitute the same occurrence or series of occurrences. The combination of all Defendants engaging in the same illegal activity in the same time span causes significant collective harm to Plaintiff.

38. Defendants, without any authorization or license, have knowingly and willfully infringed the CB Trademarks in connection with the manufacturing, advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois.

39. In committing these acts, Defendants have, willfully and in bad faith, committed the following, all of which have caused, and will continue to cause, irreparable harm to the Plaintiff: infringed upon and used counterfeit versions of the CB Trademarks; created, manufactured, marketed, and sold Counterfeit Products; used the CB Trademarks in an unauthorized manner in order to mislead and deceive consumers; engaged in unfair competition; and unfairly and unjustly profited from such activities at the expense of CB.

40. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiff.

### COUNT I
### TRADEMARK INFRINGEMENT AND COUNTERFEITING
### (15 U.S.C. § 1114, *et seq.*)

41. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

42. Without the authorization or consent of CB, and with knowledge of CB's well-known ownership rights in its CB Trademarks, and with knowledge that Defendants' Counterfeit Products bear counterfeit marks, Defendants intentionally reproduced, copied, and/or colorably imitated the CB Trademarks and/or used spurious designations that are identical with, or substantially indistinguishable from, the CB Trademarks on or in connection with the manufacturing, import, export, advertising, marketing, promotion, distribution, display, offering for sale, and sale of Counterfeit Products.

43. Defendants have manufactured, imported, advertised, promoted, distributed, displayed, offered for sale, and sold Counterfeit Products to the purchasing public in direct competition with CB and the CB Products, in or affecting interstate commerce, and/or have acted with reckless disregard of Plaintiff's rights in and to the CB Trademarks through their participation in such activities.

44. Defendants have applied reproductions, counterfeits, copies, and colorable imitations of the CB Trademarks to packaging, point-of-purchase materials, promotions, and advertisements intended to be used in commerce upon, or in connection with, the manufacturing, importing, advertising, promoting, distributing, displaying, offering for sale, and selling of Counterfeit Products, which has caused confusion, mistake, and deception among the general purchasing public as to the origin of the Counterfeit Products, and has deceived consumers, the public, and the trade into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiff, through which Defendants make substantial profits and gains to which they are not entitled in law or equity.

45. Defendants' unauthorized use of the CB Trademarks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or

licensed by Plaintiff, and with deliberate intent to unfairly benefit from the incalculable goodwill inherent in the CB Trademarks.

46. Defendants' actions constitute counterfeiting of the CB Trademarks in violation of 15 U.S.C. §§ 1114(1)(a)-(b), 1116(d), and 1117(b)-(c).

47. Defendants' intentional use of the CB Trademarks without the consent or authorization of Plaintiff constitutes intentional infringement of the CB Trademarks in violation of 15 U.S.C. § 1114.

48. As a direct and proximate result of Defendants' actions alleged herein, Defendants have caused substantial monetary loss, irreparable injury, and damage to CB, its business, its reputation, and its valuable rights in and to the CB Trademarks and the goodwill associated therewith, in an amount as yet unknown.

49. CB has no adequate remedy at law for this injury, and unless immediately enjoined, Defendants will continue to cause such substantial and irreparable injury, loss, and damage to CB and its valuable CB Trademarks.

50. Based on Defendants' actions, CB is entitled to injunctive relief, damages for the irreparable harm that CBParis Group Limited has sustained, and will continue to sustain, as a result of Defendants' unlawful and infringing actions, as well as all gains, profits, and advantages obtained by Defendants as a result thereof, enhanced discretionary damages, treble damages, and/or statutory damages of up to $2,000,000 per-counterfeit mark per-type of goods sold, offered for sale, or distributed, and reasonable attorneys' fees and costs.

<u>**COUNT II**</u>
**FALSE DESIGNATION OF ORIGIN, PASSING OFF, & UNFAIR COMPETITION**
**(15 U.S.C. § 1125, *et seq.*)**

51.     Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

52.     Plaintiff, as the owner of all right, title, and interest in and to the CB Trademarks has standing to maintain an action for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1125.

53.     Defendants' promotion, manufacturing, distribution, marketing, offering for sale, and sale of Counterfeit Products has created and continues to create a likelihood of confusion, mistake, and deception among the public as to the affiliation, sponsorship, connection, or association with Plaintiff.

54.     By using the CB Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

55.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

56.     Defendants' wrongful actions have been knowing, deliberate, willful, and intended to cause confusion, to cause mistake, and to deceive the purchasing public, with the intent to trade on the goodwill and reputation of CB, its CB Products, and its CB Trademarks.

57.     As a direct and proximate result of Defendants' actions, Defendants have caused irreparable injury to CB by depriving Plaintiff of sales of its CB Products and by depriving CB of the value of its CB Trademarks as commercial assets in an amount as yet unknown.

14

58. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

**COUNT III**
**VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 ILCS § 510, *et seq*.)**

59. Plaintiff repleads and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

60. Defendants have engaged in acts violating Illinois law, including, but not limited to, passing off their Counterfeit Products as those of Plaintiff, causing a likelihood of confusion and/or misunderstanding as to the source of Defendants' goods, thus causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with genuine CB Products, through Defendants' representation that Defendants' Counterfeit Products have Plaintiff's approval, when they do not.

61. The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq*.

62. As a direct result of the Defendants' unlawful acts, Defendants have irreparably harmed Plaintiff in an amount as yet unknown, and obtained profits they would not have otherwise realized but for their infringement of Plaintiff's trademarks.

63. Plaintiff has no adequate remedy at law, and unless enjoined by the Court, Plaintiff will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

1) That Defendants, and all persons acting for, with, by, through, under, or in active concert with them be permanently enjoined and restrained from:

    a. using the CB Trademarks or any reproductions, copies, or colorable imitations thereof, in any manner, in connection with the manufacturing, distribution, marketing, advertising, importing, offering for sale, or sale of any product, that is not an authorized CB Product or is not authorized by Plaintiff to be sold in connection with the CB Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product not produced under the authorization, control, or supervision of Plaintiff, nor approved by Plaintiff, in association with its CB Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are sold under the authorization, control, or supervision of Plaintiff, and approved by Plaintiff for sale under the CB Trademarks;

    d. manufacturing, shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff and which bear the CB Trademarks; and,

    e. further infringing the CB Trademarks and damaging Plaintiff's goodwill.

2) Entry of an Order that the Online Marketplace shall disable and cease displaying all product listings through which Defendants engage in the sale of Counterfeit Products which bear the CB Trademarks.

3) That Defendants account for, and pay to, Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged;

4) For Judgment in favor of Plaintiff against Defendants that they have willfully infringed Plaintiff's rights in its federally registered trademarks, pursuant to 15 U.S.C. § 1114;

5) That Plaintiff be awarded actual damages, statutory damages, and/or other available damages, at the election of Plaintiff; and that the amount of damages for infringement are increased by a sum not to exceed three times the amount thereof as provided by 15 U.S.C. § 1117;

6) For Judgment in favor of Plaintiff against Defendants that it has: a) willfully infringed Plaintiff's rights in its federally registered trademarks; and, b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

8) Any and all other relief that this Court deems just and proper.

Dated: July 10, 2026

Respectfully submitted,

*/s/ Alison K. Carter*
Ann Marie Sullivan
Alison K. Carter
Gouthami V. Tufts

**SULLIVAN & CARTER, LLP**
111 W. Jackson Blvd. Ste 1700
Chicago, Illinois 60604
www.scip.law
929-724-7529
a.carter@scip.law

***ATTORNEYS FOR PLAINTIFF***